**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF OHIO
WESTERN DIVISION**

Mar Oil Company,                                           Case No. 3:11CV1261

         Plaintiff

         v.                                                  **ORDER**

Myron Korpan, et al.,

         Defendant

This lawsuit arises from defendant Myron Korpan's alleged misappropriation of trade secrets while working for plaintiff Mar Oil Company (Mar). Pending are several motions in limine. This order rules on those motions (or reserves ruling pending further hearing, trial, and/or orders).

**1. Defendants Ronald Brock, Solstice Energy, LLC, and Solstice Energy Partners, LP's Motion in Limine (Doc. 229).**

Defendants, to whom, according to Mar, Korpan made the purloined trade secrets available, seek to prevent several categories of evidence. I discuss each in turn.

First, by way of background.

Mar had leases on potential drilling sites in Northwest Ohio. It employed Korpan, a professional "landman" to conduct seismic surveys of those properties to determine their likely productivity. I have previously found that he owed Mar a duty of confidentiality under standards applicable to his profession, and that, as a professional, he either knew or had reason to know of that obligation. *Mar Oil Co. v. Korpan*, 2014 WL 2986907, *7 (N.D.Ohio). These are determinations of law, not adjudications of fact, *S.E.C. v. Rorech*, 673 F.Supp.2d 217, 227 (S.D. N.Y. 2009); *see also*

*Neal v. Corning Glassworks Corp.* 745 F.Supp. 1294, 1299 (S.D. Ohio 1989). Accordingly, that ruling is binding at trial.

Likewise, my ruling on the issue of loss of investment, *Mar Oil, supra,* 973 F.Supp.2d at 783, is binding. There is nothing in the record to indicate that anything the defendants did or did not do in any way affected whatever it was that the putative investor, Marksmen Energy, Inc., did or not do. While Mar may believe otherwise, it has not presented any proof to that effect, and its belief, from an evidentiary standpoint, remains pure speculative supposition.

I have previously reserved ruling as to the admissibility of the "Ryder-Scott Report." *Id.* at 784 n.3 (suggesting, but not deciding, that the Report may be admissible under Fed. R. Evid. 803(17)). Mar desires to use this document, not just as a foundation for its expert's testimony, but also as substantive evidence of its alleged lost profits of $1.9 million.

Defendants contend the Ohio Uniform Trade Secrets Act (OUTSA), O.R.C. § 1333.61 *et seq.,* limits Mar's recovery to what it spent generating any trade secret and what defendants saved by using it, rather than generating its own equivalent information. Plaintiffs' claims include, *inter alia*, a claim for breach of contract against Korpan's company.

I am not, at present, able to determine on the basis of the record and briefs before me, whether the Ryder-Scott Report is admissible under Rule 803(17) or otherwise. While Ryder-Scott reports have been admitted elsewhere, *Venture Technology, Inc. v. National Fuel Gas. Co.,* 1981 WL 2013, *18 (W.D.N.Y.), and Ryder-Scott reports appear authoritative, *Wallace v. Wallace,* 623 S.W.2d 723, 727 (Tex.Civ.App., 1981), I am not now able to determine the reliability of *this* Ryder-Scott Report, or its fit within the evidence. I shall confer with counsel to determine how best to determine these issues (*i.e., via* pretrial hearing and possibly, further briefing, or during trial).

2

Finally, the OUTSA specifies the nature of recoverable damages:

Damages may include both the actual loss caused by misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss. In lieu of damages measured by any other methods, the damages caused by misappropriation may be measured by imposition of liability for a reasonable royalty that is equitable under the circumstances considering the loss to the complainant, the benefit to the misappropriator, or both, for a misappropriator's unauthorized disclosure or use of a trade secret.

O.R.C. § 1333.63(A).

I now turn to the individual items that defendants want me preclude from the trial.

**1. Evidence related to royalties.** Royalties are an element of damages under OUTSA. *Mar Oil, supra*, 973 F.Supp.2d at 781(citing O.R.C. § 1333.63(A)). If the jury finds defendants violated the statute, and thereby generated royalty income, evidence about that income and its relating, if any, to misuse of the trade secrets is admissible. Though not expressly mentioned in plaintiffs' complaint, plaintiffs may seek leave to amend to conform to proof. Fed. R. Civ. P. 15(b)(1).

**2. Damages for lost investment**. I agree that, in light of my earlier ruling, evidence as to the putative lost investment is not admissible at trial. There was nothing on the record before I entered my rulings, *Mar, supra*, on the parties' motions and counter-motions for summary judgment to sustain such element of damages.

**3. Evidence as to defendants' profits**. Because OUTSA specifically allows damages for unjust enrichment, the profit, if any, defendants obtained as a result of Korpan's use and disclosure of Mar's trade secrets are a proper subject for the jury's consideration.

**4. Lost profits.** The admissibility of this evidence appears related to the admissibility of the Ryder-Scott report – and other evidence, such as whether Mar generated income and profits

3

from drilling in its leaseholds. (If Mar never made any profits before abandoning its leases, then it is difficult to ascertain how it lost any *profits* therefrom as a result of defendants' post-abandonment misconduct). For these reasons, I reserve ruling on this objection.

**5. Ryder-Scott Report.** For the reasons stated above, I reserve ruling on the admissibility of the Report.

**6. Damages other than the "value of the secret."** Same ruling as ¶ 3.

**7. Conclusory statements about defendant Brock's state of mind.** Not admissible, though evidence as to statements, conduct, etc., probative of a party's state of mind is admissible. *See, e.g., Hartenstein v. New York Life Ins. Co.,* 93 Ohio App. 413, 418 (1952).

**8. Comment on Brock's credibility.** Inadmissible, without prejudice to engage in proper cross-examination and impeachment.

**9. Trade secrets other than seismic, land leasing, and drilling information.** According to plaintiff, Korpan retained a substantial quantity of documents and materials. They can show that whatever Korpan used for his benefit, the benefit of National Energy, or the benefits of defendants, whether whatever he used was seismic, land leading, or drilling information or something else from the storehouse of materials as to which he owed a duty of nondisclosure.

**10. Brock's individual liability for his companies' wrongdoing.** While piercing the corporate veil is a matter of fact, *Minno v. Pro-Fab*, 2007 WL 4292625, *4 (Ohio App.), not an issue of law, and thus for the jury, I am concerned that this issue may complicate an already complex trial. This is an issue that I would prefer to have the parties brief on summary judgment for my possible decision before trial. Defendants have pointed to facts

in their motion indicating that veil-piercing may not be possible. (Doc. 229, at 2). The facts as to the relationship between the parties may well not be disputable. For now, I hold in abeyance a ruling on this aspect of the motion in limine. I shall discuss the option of a pretrial determination as to whether sufficient evidence exists to submit the issue of veil-piercing to the jury.

**11. Brock's status as a partner in Solstice Energy Partners.** Ruling held in abeyance pending further discussion and, possibly, hearing per ¶ 10 above.

**12. Evidence re. joint venture.** Ruling held in abeyance pending further discussion and, possibly, hearing per ¶ 10.

**13. Tortious interference with business; unfair competition.** Overruled as moot, as plaintiffs' response states they intend not to make such assertion.

**14. Evidence/suggestion that Korpan's use of lease is actionable.** Granted, but without prejudice to plaintiffs' right to attempt to prove that Korpan's use of the leases involved use of Mar's trade secrets.

**2. Mar's motion in limine to exclude arguments and testimony contrary to prior rulings (Doc. 230).**

I discuss each of the several numbered paragraphs in this motion in sequence.

**1. Korpan's lack of duty of confidentiality.** I have already noted that my ruling as to the duty and his knowledge, or, at the very least, that he had reason to know he owed that duty to Mar. That ruling is binding and preclusive of further dispute on that subject.

**2. Industry standard of confidentiality.** Same ruling as ¶ 1, above.

**3. Korpan's actual awareness of his duty of confidentiality.** Testimony as to Korpan's actual knowledge or lack thereof is immaterial. The duty existed; he was a long-time professional in the field. Actual unawareness of his obligations to his employer is not a defense to a breach of professional standards.

**4. The continuing effect of the duty of confidentiality under the Gross Overriding Royalty Agreemant (GORA).** The GORA was the parties' contractual agreement regulating Korpan's duties and responsibilities. In another earlier opinion in this case, *Mar Oil Co. v. Korpan,* 2014 WL 2986907, *15 (N.D.Ohio) ("*the language of the GORA clearly and unambiguously intends the confidentiality provision to remain effective indefinitely"). This was a matter of contract interpretation, which is a matter of law, not fact. *E.g., Saunders v. Mortensen*, 101 Ohio St.3d 86, 88 (2004). As such, my earlier ruling is binding.

**5. Mar's duty to request return of its trade secret material**. Mar had no *duty* to request return of the information that it deemed its trade secrets. Nonetheless, it had to take reasonable steps to preserve its secrets. *State ex rel. The Plain Dealer v. Ohio Dep't of Insurance*, 80 Ohio St.3d 513, 525 (1997) ("possessor of a potential trade secret must take some active steps to maintain its secrecy in order to enjoy presumptive trade secret status."). This will be an issue before the jury, which will need to determine whether plaintiffs did so. The fact that plaintiffs had no duty to ask Korpan to return its trade secret materials, that they did not ask for their return, though not dispositive, is something the jury can take into account in assessing the reasonableness of their efforts to preserve the confidentiality of those secrets.

**6. Mar's lack of knowledge of misappropriation.** I agree with the plaintiff that defendants cannot contend that Mar has to prove that it lacked knowledge of Korpan's alleged misuse and disclosure of its trade secrets. What Mar knew or did not know about that conduct, and when it knew or did not know it are relevant to the issue of the reasonableness of the steps Mar took to preserve its trade secrets. But Mar does not have to prove the negative – that it was unaware of the misconduct in order to retain its proprietary rights in those secrets and recover for their unauthorized disclosure or misuse.

**7. Measure of damages**. The statutory measure of damages, O.R.C. § 1333.63(A), *supra*, controls the admissibility of evidence as to damages for violation of the statute. If plaintiffs prove a breach of the GORA, conventional doctrines relating to compensatory damages for breach of contract shall apply to the admissibility of evidence on that subject.

**8. Arguments that neither Korpan nor Brock is personally liable for any damages.** If plaintiffs prove Korpan's misconduct, both he and his company, National Energy, are personally liable – he as the wrongdoer, and the company for the acts of its agent undertaken on its behalf. With regard to Brock, personal liability can attach only if plaintiff can pierce the corporate veil.

**9. Arguments that National Energy is not liable if Korpan breached the GORA by disclosing and misusing Mar's trade secrets.** If Korpan breached the GORA, then National Energy is liable as Korpan's principal.

**10. Mar's obligation to continue paying royalties if Korpan breached the GORA by disclosing or using Mar's trade secrets.** A breach by Korpan of the GORA, if it occurred and precedes any nonpayment, relieved Mar of any obligation to make further payments.

**11. Alleged tortious interference by Mar.** In light of dismissal of the defendants' tortious interference with business relationships claim, evidence on that subject is not admissible.

**12. Mar's common law claims re. fiduciary duty and tortious interference.** Having been dismissed, evidence relating to those claims and their dismissal is not relevant.

**3. Mar's motion in limine to exclude reference to Mar's motion for a preliminary injunction (Doc. 231).**

Evidence as to the fact of the preliminary injunction hearing and its outcome is not admissible. Evidence presented at the hearing is admissible for proper purposes, among them impeachment.

 **4. Mar's motion to exclude evidence of corporate transactions (Doc. 232).** The ownership of Mar, according to defendants, meandered during the decade 2001-2011. Defendants want to introduce evidence of these meanderings to show that Mar has not and does not presently own the trade secrets at issue in this case. (Doc. 237). Whether Mar owned the trade secrets or not is immaterial: what matters is that it possessed the trade secrets. Its possession gave it greater rights as against all others, except the owner. A thief cannot dispute his victim's title or lack thereof in the goods the thief steals. *Cf. State v. Lee,* 159, 904 P.2d 1143, 1147 (Wash. 1995) (I]n cases of theft and larceny proof of ownership of the stolen property in the specific person alleged is not essential. The State is required to prove only that it belonged to someone other than the accused.").

Korpan – if he misappropriated trade secrets belong to someone else – cannot justify his actions on the basis that Mar merely had possession of those secrets, but someone else owned them. It's up to the owner to deal with Mar, if it recovers against the defendants.

In any event, allowing proof of the various transactions would distract and confuse the jurors to such an extent that those risks vastly outweigh the minimal probative value anyone could ascribed to the proposed testimony. Fed. R. Evid. 403.

**5. Mar's objections to defense exhibits (Doc. 253).** It seems likely that my rulings herein affect the extent to which disputes about exhibits continue to exist. That being so, I will hold consideration of that motion in abeyance pending further discussion with counsel.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT:

1. The foregoing constitutes this court's rulings on the motions in limine (Docs. 229, 230, 231, and 232) that the parties have submitted;

2. Ruling on plaintiffs' motion to exclude exhibits (Doc. 253) held in abeyance.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge